In Re: Appeal of Edwin R. THOMPSON and Karen J. Thompson from the decision dated January 2, 2004 of the Horsham Township Council

Appeal of: Orleans Corporation and Orleans Homebuilders, Inc.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2005.

Decided March 30, 2006.

Neil Andrew Stein, Blue Bell, for appellants.

Stephen G. Yusem, Norristown, for appellees, Edwin R. Thompson and Karen J. Thompson.

Mary C. Eberle, Perkasie, for appellee, Horsham Township Council.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Before this Court is the appeal of Orleans Homebuilders, Inc. and Orleans Corporation (collectively, Appellants) from a decision of the Court of Common Pleas of Montgomery County (trial court), which sustained the appeal of Edwin R. Thompson and Karen J. Thompson (Thompsons) from the decision of the Horsham Township Council (Council) and reversed Council's decision granting Appellants' conditional use application. Also before the Court is an Application for Relief filed by Appellants seeking reimbursement for the cost of the reproduced record. We reverse the order of the trial court and deny Appellants' application for relief.

Orleans Homebuilders, Inc. is the equitable owner of property located on the northwest corner of Welsh Road and Mann Road in Horsham Township, Montgomery County (Property). The Property is approximately 39.5 acres and is located in an R–2 zoning district (low density residential district) as established by the Horsham Township Zoning Ordinance (Ordinance), as amended.[1] There exists on the Property a watercourse, which curves along the

---

1. Ordinance No. 1143 was enacted by Horsham Township on November 28, 1995 and was subsequently amended by Ordinance No. 1144 on February 14, 1996, Ordinance No. 1145 on November 12, 1997, Ordinance No. 1146 on March 18, 1998, Ordinance No. 1147 on September 16, 1998, Ordinance No. 1148 on November 2, 1998, and Ordinance No. 1149 on December 9, 1998.

southeast boundary of the Property. A Riparian Corridor Conservation District (RCCD),[2] runs on either side of the watercourse. The RCCD is divided into two zones. Zone One is the area within 25 feet of the watercourse; Zone Two begins at the outer edge of Zone One and occupies an additional width of 50 feet. Therefore, the entire RCCD encompasses a width of 75 feet on each side of the watercourse.

 Appellants filed with Council an application for conditional use approval[3] to permit disturbance within the RCCD to allow a roadway, utility crossings, stormwater discharge, and portions of detention basins. The relief was requested in connection with Appellants' preliminary subdivision and land development plan (Subdivision Plan), filed pursuant to the "Horsham Township Subdivision and Land Development Ordinance of 1976, as amended" (SALDO), which proposes to subdivide the Property into 22 lots, 20 of which would be developed with single family houses, two of which, Lots 21 and 22, would be developed with three detention basins.

The Township Planning Commission reviewed the conditional use application and recommended that Council approve the same. A series of public hearings—17 to be exact—on the application were held before Council. The Thompsons, who are owners and residents of a nearby property, appeared at the hearings before Council and presented testimony and evidence in opposition to the application.

 On January 2, 2004, Council issued an adjudication granting Appellants' application for conditional use of the Property subject to 17 conditions. On January 30, 2004, the Thompsons appealed Council's decision to the trial court. Appellants intervened in the appeal. Without receiving additional evidence, the trial court made its own findings of fact and conclusions of law, and imparted its own interpretation of various Ordinance provisions. By order dated January 6, 2005, the trial court sustained the Thompsons' appeal and reversed Council's decision to grant the conditional use application. Appellants' appeal now follows.[4] Council has also filed a

2. The RCCD was established with the enactment of Ordinance No. 1147. RCCD is defined by the Ordinance as:

> An area surrounding surface water bodies, including creeks, lakes, watercourses, and wetlands that intercept surface water runoff, wastewater, subsurface flow, and/or deep groundwater flows from upland sources and function to remove or buffer the effects of associated nutrients, sediment, organic matter, pesticides, or other pollutants prior to the entry into surface waters. This area may also provide wildlife habitat, control water temperature, attenuate flood flow, and provide opportunities for passive recreation.

Section 200 of the Ordinance, R.R. at 1966a.

3. The Thompsons assert that Council erred in considering the conditional use application because the application was filed by Orleans Corporation, the proposed builder and developer, not the landowner. Orleans Homebuilders, Inc., the landowner, was not

originally named as an applicant. Only a landowner has standing to apply for relief in zoning matters. Section 107 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10107; Section 2508.1 of the Ordinance; *Collier Stone Co. v. Township of Collier Board of Commissioners*, 735 A.2d 768 (Pa.Cmwlth.1999). On June 9, 2003, the application was amended by counsel to provide for the joinder of Orleans Homebuilders, Inc. as a co-applicant. R.R. at 1736a. While Orleans Homebuilders, Inc. did not actually file the conditional use application, counsel's letter joining Orleans Homebuilders, Inc. as an applicant in the early phase of the proceedings cured this defect. Council did not err in granting party status to Orleans Homebuilders, Inc. and Orleans Corporation.

4. In a land use appeal, where, as here, the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body

brief in this matter in support of Appellants' appeal. Appellants present the following issues for our review:

1. Did the trial court commit an error of law and/or abuse of its discretion by substituting its judgment for Council and finding contrary to Council that the landowner failed to sustain the burden of proof required for the relief requested in the conditional use application?

2. Did the trial court commit an error of law and/or abuse of its discretion by substituting its judgment for Council and finding contrary to Council finding that the Thompsons had sustained the burden of proof required for Council to deny the application merely by pointing out alleged design deficiencies in the Subdivision Plan?

3. Did the trial court commit an error of law and/or abuse of its discretion by substituting its judgment for Council, which resulted in a finding that the decision was not supported by substantial evidence?

4. Did the trial court commit an error of law and/or abuse of its discretion by substituting its judgment for Council and making its own determinations concerning the weight of the evidence and the credibility of witnesses?

5. Did the trial court commit an error of law and/or abuse of its discretion by substituting its judgment for Council and finding that Council has made procedural and/or substantive errors of law in the decision, specifi-

cally but not limited to the attachment of conditions as were appropriate to clarify the Ordinance and/or to ensure that appropriate design changes would be made to the Subdivision Plan?

## SCOPE OF REVIEW

■ Appellants contend that Council did not err or abuse its discretion in making determinations concerning the weight of evidence and credibility of witnesses and that the trial court exceeded its authority by substituting its judgment for that of Council. We agree.

■ The proper scope of review in this appeal is set forth in Section 754(b) of Local Agency Law, 2 Pa.C.S. § 754(b); *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 206 (Pa. Cmwlth.2002). Section 754(b) provides:

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evi-

committed an error of law or an abuse of discretion. *Herr v. Lancaster County Planning Commission*, 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), *petition for allowance of appeal denied*, 538 Pa. 677, 649 A.2d 677 (1994). The governing body abuses its discretion when its findings of fact are not supported by

substantial evidence. *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983); *Collier Stone.*

dence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 754(b). A "full and complete record" is defined as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *City of Philadelphia v. Board of License and Inspection Review,* 139 Pa.Cmwlth. 240, 590 A.2d 79, 86 (quoting *Springfield School District v. Shellem,* 16 Pa.Cmwlth. 306, 328 A.2d 535, 538 (1974)), *petition for allowance of appeal denied,* 529 Pa. 625, 600 A.2d 540 (1991). In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo,* or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court. Section 754(a) of Local Agency Law, 2 Pa.C.S. § 754(a).

■ Pursuant to Section 754(b), a reviewing court may properly reverse where it determines that constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or the necessary findings of fact were not supported by substantial evidence. *SSEN; Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 565 Pa. 680, 775 A.2d 811 (2001). A reviewing court may look only to the evidence relied upon by the fact finder, in this case Council, to see if it is sufficiently substantial to support the findings. Section 754(b) of the Local Agency Law; *SSEN; Kish v. Annville–Cleona School District,* 165 Pa.Cmwlth. 336, 645 A.2d 361,

363–364 (1994). "Nowhere in Section 754 is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record...." *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia,* 804 A.2d 147, 150 (Pa.Cmwlth.2002).

■ A reviewing court must accept the credibility determinations made by the municipal body which hears the testimony, evaluates the credibility of the witnesses and serves as fact finder. *Young v. Pistorio,* 715 A.2d 1230 (Pa.Cmwlth.1998); *Collier Stone Company v. Zoning Hearing Board for the Township of Collier,* 710 A.2d 123 (Pa.Cmwlth.1998). The reviewing court is not to substitute its judgment on the merits for that of the municipal body. *East Torresdale Civic Association v. Zoning Board of Adjustment of Philadelphia County,* 536 Pa. 322, 639 A.2d 446 (1994); *Kish; Snyder v. Railroad Borough,* 59 Pa.Cmwlth. 385, 430 A.2d 339 (1981). Assuming the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings which are the result of resolutions of credibility and conflicting testimony. *Snyder.*

In this matter, Council conducted 17 evidentiary hearings and has developed a full and complete record. Because a full and complete record was made before the Council, it is that body and not the trial court which is the ultimate factfinder in these proceedings. *Andras v. Wyalusing Borough, Wyalusing Borough Council,* 796 A.2d 1047, 1049 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 570 Pa. 688, 808 A.2d 573 (2002). As factfinder, Council properly made determinations as to the weight of evidence and credibility of witnesses. While both sides presented a great deal of evidence, Council found the

evidence presented by Appellants to be more credible and persuasive. Such credibility determinations are within the sole province of Council and, absent an abuse of discretion, should not have been disturbed by the trial court, which did not take testimony or have the opportunity to observe the demeanor of witnesses. *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 569 Pa. 723, 806 A.2d 863 (2002). We, therefore, conclude that the trial court exceeded its authority by making its own findings of fact and conclusions of law in the case *sub judice*. We shall review Council's findings to determine if they are supported by substantial evidence in the record.

## COUNCIL'S INTERPRETATION OF THE ORDINANCE

Appellants also contend that, absent an abuse of discretion or an error of law, Council's interpretation of the Ordinance should be given great weight and deference and should not have been substituted by the trial court. We agree.

▬▬▬ The rules of statutory construction are applicable to statutes and ordinances alike. *Glendon Energy Co. v. Borough of Glendon*, 656 A.2d 150 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 705, 670 A.2d 644 (1995); *Board of Supervisors of Richland Township v. Tohickon Creek Associates*, 123 Pa.Cmwlth. 111, 553 A.2d 492 (1989); *Diehl v. McKeesport*, 60 Pa.Cmwlth. 561, 432 A.2d 288 (1981); *Appeal of Neshaminy Auto Villa, Ltd.*, 25 Pa.Cmwlth. 129, 358 A.2d 433 (1976). One of the primary rules of statutory construction is that an ordinance must be construed, if possible, to give effect to all of its provisions. *Mann v. Lower Makefield Township*, 160 Pa. Cmwlth. 208, 634 A.2d 768 (1993). An interpretation of an ordinance which pro-

duces an absurd result is contrary to the rules of statutory construction. *Glendon Energy*. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. Undefined terms used in an ordinance must be given their common and approved usage. *Glendon Energy; Spahr–Alder Group v. Zoning Board of Adjustment of City of Pittsburgh*, 135 Pa.Cmwlth. 561, 581 A.2d 1002 (1990).

▬▬▬ When statutory language is not explicit, courts should give great weight and deference to the interpretation of a statutory or regulatory provision by the administrative or adjudicatory body that is charged with the duty to execute and apply the provision at issue. Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(8); *Johnston v. Upper Macungie Township*, 162 Pa.Cmwlth. 170, 638 A.2d 408 (1994). The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering. *Willits Woods Associates v. Zoning Board of Adjustment of City of Philadelphia*, 138 Pa.Cmwlth. 62, 587 A.2d 827 (1991). Thus, we shall review Council's interpretation of the relevant Ordinance provisions for errors of law and abuses of discretion and extend judicial deference where due.

## CONDITIONAL USE CRITERIA

▬▬▬ Appellants contend that Council did not err in determining that Appellants could and did establish entitlement to a conditional use approval without first demonstrating strict compliance with all of the criteria otherwise required independently

in the zoning permit and subdivision application process. We agree.

The Pennsylvania Municipalities Planning Code [5] (MPC) provides that a zoning ordinance may contain "provisions for conditional uses to be allowed or denied by the governing body pursuant to public notice and hearing and recommendations by the planning agency and pursuant to express standards and criteria set forth in the zoning ordinances." Section 603(c)(2) of the MPC, 53 P.S. § 10603(c)(2). A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board. *Collier Stone.* As in the case of special exceptions, the uses which may be established or maintained as conditional uses are prescribed by the zoning ordinance and the standards to be applied to the granting or denial thereof are set forth in the zoning ordinance. *City Planning Commission v. Threshold, Inc.,* 12 Pa.Cmwlth. 104, 315 A.2d 311 (1974). A special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance for the special exception are met by the applicant. *Blancett–Maddock v. Zoning Board of Adjustment,* 163 Pa.Cmwlth. 193, 640 A.2d 498, 500–501 (1994), *petition for allowance of appeal denied,* 540 Pa. 604, 655 A.2d 992 (1995).

Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both. *Sheetz, Inc. v. Phoenixville Borough Council,* 804 A.2d 113 (Pa.Cmwlth.2002), *petition for allowance of appeal denied,* 573 Pa. 669, 820 A.2d 706 (2003). An applicant for conditional use has the burden to demonstrate

compliance with the specific criteria of the ordinance. *Levin v. Board of Supervisors of Benner Township,* 669 A.2d 1063 (Pa. Cmwlth.1995), *aff'd,* 547 Pa. 161, 689 A.2d 224 (1997). Once the applicant meets the requirements, he has made out his prima facie case and the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Bailey v. Upper Southampton Township,* 690 A.2d 1324 (Pa.Cmwlth.1997).

Generally, satisfying the criteria for conditional use is just one step of the subdivision approval process. In fact, subdivision approval cannot be granted until the conditional use approval is first obtained. *See Residents Against Matrix v. Lower Makefield Township,* 845 A.2d 908 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 572 Pa. 716, 813 A.2d 847 (2002) (a governing body cannot approve an application for final subdivision and land development when the applicant did not first apply for approval for the intended use.). Special exception or conditional use proceedings involve only the proposed use of the land, and do not involve the particular details of the design of the proposed development. *Schatz v. New Britain Township Zoning Hearing Board of Adjustment,* 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991).

What must be demonstrated in order to obtain conditional use approval must be determined on a case by case basis and will vary among municipalities based upon the use requested and the language in the ordinance. *See, e.g., Sheetz,; Brickstone Realty; Schatz.* In *Schatz,* we held that a zoning board could not reject an application for a special exception as not being in the best interest of the community because

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101—11202.

the application did not address the issues of adequate sewage capacity, storm water management or water supply requirements. We held that "such issues are to be addressed further along the permitting and approval process. Zoning only regulates the *use* of land and not the particulars of development and construction." *Schatz*, 596 A.2d at 298; *compare East Manchester Township v. Dallmeyer*, 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992) (we allowed the more stringent requirements for water supply and sewage to be considered because these requirements were a part of the township's special exception requirements).

Similarly, in *Brickstone Realty*, we held that detailed design information such as floor plans, even if required by the ordinance, is not relevant to the consideration of a special exception or conditional application. All the ordinance required for approval of the use was information indicating the nature, size, and location of the proposed use. 789 A.2d at 339.

In *Sheetz*, the applicant sought a conditional use permit for construction of a service station. The application was denied by borough council on the grounds that the applicant failed to demonstrate compliance with requisite standards of a "service conditional use." The application did not show the required 40–foot buffer zone or planted buffer screen, which were required for the conditional use for a service station. The borough council reasoned that the applicant was not entitled to approval of its application by allowing them to establish compliance later in the context of a land development plan application. Thus, the applicant failed in its burden of establishing its application's compliance with the necessary requirements as a precondition to approval. We opined, the applicant "is not permitted to evade these requirements because a ser-

vice station is a conditional use, and upon review, Borough Council properly denied the application." *Sheetz*, 804 A.2d at 115.

*In re Application for Conditional Use Approval of James Saunders*, 161 Pa. Cmwlth. 392, 636 A.2d 1308 (1994), *petition for allowance of appeal denied*, 540 Pa. 625, 657 A.2d 494 (1995), the applicant sought a conditional use permit to develop a 367–unit mobile home park on the property. The zoning ordinance listed a mobile home park as a conditional use in the agricultural district. The township supervisors denied the application on the basis that the application was deficient in various areas, especially failing to comply with the zoning ordinance's requirements of showing a centralized sewer and water system. Our review of the record revealed that the applicant presented testimony, diagrams and descriptions of the proposed water and sewage facilities. We opined that approval of a use is only the first step along the road for an applicant to receive an occupancy permit. We held that the information provided by the applicant was adequate to meet the requirement set forth in the zoning ordinance that the mobile home park have "central sewer and water" and that the Supervisors erred in denying the conditional use application on the basis that the application itself did not meet the requirements for adequate water and sewage. *James Saunders*.

■ What we garner from these cases is that an applicant seeking conditional use approval must demonstrate compliance with the express standards and criteria of the ordinance that relate specifically to the conditional use. As illustrated above, those criteria will vary from ordinance to ordinance.

In the instant case, the principal use of the Property—residential development—is permitted by right. The conditional use application—for the disturbance of the

RCCD—is permitted by right and by conditional use by the Ordinance. To obtain conditional use approval for disturbance in the RCCD, applicants must demonstrate compliance with the RCCD standards and criteria set forth in Section 521.E. of the Ordinance as well as the general standards and criteria for conditional use approval set forth in Section 2508.

Whenever a conditional use is authorized pursuant to the terms of the Ordinance, the landowner shall make a written request to Council that it hold a hearing on the application and the application shall be accompanied by plans and other materials required for a special exception (Section 2505 of the Ordinance).[6] Section 2508 of the Ordinance, R.R. at 1934a. If the application involves subdivision or land development, plans prepared in accordance with the requirements of SALDO must be filed for review as well. *Id.*

Section 521.E of the Ordinance permits certain uses by right and by condition in the RCCD. In Zone One—the area within 25 feet of the watercourse—the uses permitted by conditional use include "[c]orridor crossings of recreational trails, roads, railroads, centralized sewer and/or water lines, and public utility transmission lines." Section 521.E.4.a.ii.(a), R.R. at 1974a. In Zone Two—the area that begins at the outer edge of Zone One and occupies an additional width of 50 feet—uses permitted by right include "[m]inimum required front, side, and rear yards on private lots, provided that no yard may extend into Zone Two more than half the distance between the outer boundaries of Zone One and Zone Two." Section 521.E.4.b.i(c), R.R. at 1976a. In Zone Two, uses permitted by conditional use include:

(b) Corridor crossings of roads, railroads, centralized sewer and/or water lines, and public utility transmission lines.

\* \* \*

(f) Naturalized stormwater basins. The entire basin shall be located at minimum of 50 feet from the defined edge of the identified watercourse.

Section 521.E.4.b.ii, R.R. at 1977a.

Beyond Sections 521.E. and 2508 of the Ordinance, there are no other special requirements applicable to conditional uses in the RCCD. Detailed design of the proposed development and compliance with detailed requirements of the Ordinance and SALDO, while required for ultimate subdivision approval, are not required for conditional use approval and are beyond the limited scope of the conditional use proceeding.

---

**6.** This includes:

Name and address of the applicant.

Name and address of the owner of the real estate to be affected by the proposed exception or variance.

A brief description and location of the real estate to be affected by such proposed change.

Present zoning classification of the real estate in question, the improvements thereon, and its present use.

Section of this Article under which the variance or exception requested may be allowed and reasons for which it should be granted.

A reasonably accurate description of the improvements and the additions intended to be made under this application, indicating the size of such proposed improvements, material and general construction thereof, and attached thereto shall be a plot plan of the real estate to be affected, prepared by a registered engineer, indicating the location and size of the lot and the size of the improvements now erected and proposed to be erected thereon.

A deposit to cover the cost of advertising and notifications shall accompany the application in accordance with Article XXVII, Section 2806.

Section 2505 of the Ordinance, R.R. at 1933a–1934a.

With the above principles and standards in mind, we shall review the specific conditional use criteria, as delineated below, to determine whether Council's challenged findings are supported by substantial evidence and support a conclusion that Appellants have met the burden of proving compliance with the specific conditions and requirements of the Ordinance applicable to the conditional uses in the RCCD, whether the defects alleged by the Thompsons and found by the trial court warrant denial of the conditional use application, and whether Council's interpretation of the relevant Ordinance provisions constitutes an abuse of discretion or an error of law.

*Naturalized Stormwater Basins*

■ According to the Ordinance, naturalized stormwater basins are permitted by conditional use in Zone Two. Section 521.E.4.b.ii(f), R.R. at 1977a. The entire basin must be located at a minimum of 50 feet from the defined edge of the identified watercourse. *Id.* A "naturalized stormwater basin" is defined by the Ordinance as:

A pond like structure designed to minimize the detrimental effects of surface water runoff. Naturalized basins are those that exhibit curvilinear shapes reflective of the surrounding topography, and thus tend to blend in with the surrounding environment. Such basins are planted with cover vegetation such as grass, crown vetch, native grasses, and appropriate shrubs and trees based on the intended use of the basin, maintenance requirements, structural integrity of the berm area, and conformity with surrounding landscaping.

Section 200 of the Ordinance, R.R. at 1966a. Watercourse is defined as an "intermittent or perennial stream of water, river, brook, creek, swale; a channel or ditch for water, whether natural or manmade." Section 200 of the Ordinance, R.R. at 1965a.

Council found that Basins 1, 2, and 3 are designed to be at least 50 feet from the edge of the watercourse as required by Section 521.E.4.b.ii(f). Finding of Fact (F.F.) 21, R.R. 3778a. Appellants' "Riparian Corridor Management Plan" (R.R. at 2328a, 3173a) which is part of Appellants' preliminary Subdivision Plan, shows that the basins are at least 50 feet from the watercourse. The watercourse is depicted on the plan with a broken line, separating Zone One in two. According to the graphic scale, one inch represents 50 feet. Based upon our review, the entire basin is located at least one inch, i.e., 50 feet, from the defined edge of the watercourse, including the edge of a tributary from the central watercourse. Additionally, Appellants' engineer, Mark S. Mayhew, who prepared the Subdivision Plan, credibly testified to this effect. R.R. at 31a. We, therefore, conclude that Council's finding is supported by substantial evidence.

■ Council further found that Basins 1 and 3 generally exhibit a curvilinear shape reflective of the surrounding topography and thus tend to blend with the surrounding environment and are naturalized basins in accordance with the definition set forth in the Ordinance. F.F. 22, 23, R.R. at 3778a. Before we can determine whether this finding is supported by substantial evidence, we must first determine whether Council erred or abused its discretion in its interpretation of the Ordinance. The Ordinance provides that "Naturalized basins are those that exhibit curvilinear shapes reflective of the surrounding topography, and thus tend to blend in with the surrounding environment." Section 200 of the Ordinance, R.R. at 1966a. According to Council's interpretation, "curvilinear" and "reflective of surrounding topography" are to be read together, not apart, as the descriptions are not separated by a comma. The Ordi-

nance does not specify how many curves or the degree of curves required; it just requires the basins to have a curvilinear alignment reflective of the surrounding topography. R.R. at 1419a. Thus, it would be possible for some portions of the basins to contain rectilinear lines, provided these lines reflect the surrounding topography and blend in with the surrounding environment, and not be in violation of the Ordinance. Conversely, the trial court, in interpreting this provision, determined that the basins must be curvilinear in all aspects, regardless if portions of the surrounding topography are rectilinear. We believe that Council's interpretation of the Ordinance is reasonable and gives meaningful effect to the phrase "reflective of the surrounding topography" as well as the term "curvilinear." We, therefore, conclude that Council's interpretation merits deference and that the trial court erred in substituting its judgment for that of Council.

■ Council's finding that Basins 1 and 3 generally exhibit a curvilinear shape reflective of the surrounding topography is supported by the Subdivision Plan and testimony of landscape architect, David S. Cavanaugh. Mr. Cavanaugh testified that Basin 1 exhibits the characteristics of a naturalized stormwater basin because it is reflective of the surrounding topography. R.R. at 1415a. Mr. Cavanaugh explained that Welsh Road is a linear road and the portion of Basin 1, which runs along Welsh Road, reflects this linear topography. Id. Mr. Cavanaugh testified that the opposite side of the basin is curvilinear, reflective of the surrounding woodlands. Id. With regard to Basin 3, Mr. Cavanaugh testified that the basin reflects the surrounding topography and has some curvilinear pattern

as it matches on the eastern and northeastern end against the wetlands area. R.R. at 1416a. Mr. Cavanaugh did concede that the basins were "rather linear," but asserted that they reflect the prominent features of the surrounding topography. Notes of Testimony (N.T.) (10/30/2003) p. 1727. Mr. Cavanaugh consistently testified that the basins "have curves" and are "curvilinear" and meet the definitional criteria for naturalized stormwater basin as interpreted by Council. We, therefore, conclude that Council's findings are supported by substantial evidence.

*Stormwater Discharge*

■ "Stormwater discharge" is not expressly enumerated as a "use" under permitted or conditional uses in the RCCD. However, Council did not find this omission to be prohibitive.[7] Naturalized stormwater basins, which are defined as pond like structures designed to minimize the detrimental effects of surface water runoff are permitted by conditional use in Zone Two. Sections 200 and 521.E.4.b.ii(f) of the Ordinance, R.R. at 1966a, 1977a. Council found that stormwater runoff from the Property will be collected onsite in inlets and conveyed through onsite storm water pipes to the basins. F.F. 43, R.R. at 3780a. Recognizing that stormwater basins are permitted in the RCCD, Council reasoned that a necessary function of a stormwater basin is to hold and release stormwater. The trial court, however, determined that because "stormwater discharge" is not expressly enumerated as a use under permitted or conditional uses, it is prohibited. Given that stormwater basins are permitted by conditional use in the RCCD, it should follow that such ba-

---

7. We note that Council did not determine whether discharge of stormwater constitutes a "use" of land.

sins should be permitted to collect and release surface water runoff from a storm. Based upon our review, we believe that Council's interpretation of the Ordinance is reasonable, gives effect to all provisions of the Ordinance and does not create an absurd result. We, therefore, conclude that Council did not err or abuse its discretion by permitting stormwater discharge in the stormwater basins and the trial court erred in substituting its judgment for that of Council.

*Floodplain*

■ The trial court, not Council, found that there would be an impermissible discharge of stormwater in the Floodplain Conservation District (FCD), in violation of Section 2903 and 2904 of the Ordinance, pertaining to permitted and conditional uses in the FCD. However, Council determined that provisions relating to the FCD are not applicable to the instant application. First, Council found that while floodplain areas exist on the Property, no basins are located in the floodplain. F.F. 18, R.R. at 3778a. This finding is supported by the testimony of Mark Mayhew. N.T. (2/24/03) p. 50–51. Second, the instant application seeks use approval for permitted and conditional uses in the RCCD, not in the FCD. As discussed above, this application represents only one portion of the numerous approvals that are required before construction can begin. Whether or not Appellants need to obtain use approval for use in the FCD is a separate issue unrelated to the application at hand. We agree with Council that the floodplain regulations are not part of the express stan-

dards and criteria for conditional use approval in the RCCD and cannot form the basis for denying the instant conditional use application.

*Road Crossing*

■ Corridor "crossings" of recreational trails, roads, railroads, centralized sewer and/or water lines, and public utility transmission lines are permitted by conditional use in Zones One and Two. Sections 521.E.4.a.ii(a) and 521.E.4.b.ii(b) of the Ordinance, R.R. at 1974a, 1977a. By contrast, centralized sewer lines, water lines and public utility transmission lines are permitted by conditional use to "run along" the corridor in Zone Two. Section 521.E.4.b.ii(c) of the Ordinance, R.R. at 1977a.

Council found that the internal street crosses the RCCD at its intersection with Welsh Road, turns eastward and runs outside of, but parallel to, the RCCD, then turns and crosses the RCCD once again prior to connecting with Mann Road. F.F. 13, R.R. at 3777a. Council further found that the minimal disturbance created by the road and utility crossings of the RCCD are offset by the need for a through road and two means of emergency access.[8] F.F. 14, R.R. at 3777a. Council found that utility lines will be located within the bed of the proposed roadway and therefore will not be a separate intrusion into the RCCD. F.F. 16, R.R. at 3777a.

A review of the record reveals that the proposed road crosses the RCCD twice and does not "run along" or follow the RCCD. The Subdivision Plan clearly de-

8. An earlier version of the Subdivision Plan had depicted two culs-de-sac and no roadway crossing of the RCCD. F.F. 11, R.R. at 3777a. The Township Planning Commission and Council requested Appellants to modify the Plan to eliminate the culs-de-sac and provide one internal through street running from

Welsh Road to Mann Road. F.F. 12, R.R. at 3777a. Storm sewer, sanitary sewer, water, gas, electric, telephone and cable utilities would be buried under the internal street. *Id.* The change was requested to improve traffic flow and emergency access. *Id.*

picts the road crossing the RCCD in two locations and connecting to Mann Road and Welsh Road. R.R. at 2321a–2325a, 2327a–2328a. Even the Thompsons' exhibit illustrates the same. R.R. at 3439a. The internal road does not "run along" any stretch of the RCCD. We, therefore, conclude that Council's finding is supported by substantial evidence in the record and supports a conclusion that the proposed road crosses the corridor as permitted by conditional use.

*Steep Slopes*

■ Steep slopes are areas where the average slope exceeds fifteen percent. Section 200 of the Ordinance, R.R. at 1764a. Section 521.C of the Ordinance regulates steep slopes. Slopes of 25% or greater shall not be altered, regarded, cleared, built upon or otherwise disturbed unless such disturbance is necessary to:

 a. Accommodate a street, driveway, or utility line when no other feasible route for such an activity exists, and if the slope disturbance is minimized to the greatest extent feasible to accommodate such activity; or

 b. Accommodate a trail or trails that are part of an existing or planned trail network, and are located and constructed based on accepted best management practices for minimize erosion.

 c. In no case shall more than 20% of land with slopes of 25% or greater be disturbed.

Section 521.C of the Ordinance, R.R. at 1969a.

Appellants' Subdivision Plan proposes the creation of a culvert to be installed as part of the road crossing, which will in turn produce a manmade steep slope. Council found that the culvert under the road crossing is necessary to provide capacity to handle stormwater. F.F. 52, R.R. at 3781a. Council further found that the culvert has been properly designed and sized by Appellants. F.F. 51; R.R. at 3780a.

While the Thompsons argue that the creation of a manmade steep slope violates the Ordinance, review of the Ordinance reveals that manmade slopes are permitted. Section 521.C.5 of the Ordinance provides that manmade slopes shall be exempt from the steep slope provisions if it is determined that the alteration, clearing, re-grading, and construction upon such slopes will not be injurious to the health, safety and welfare of the community. R.R. at 1970a. Council's interpretation that manmade steep slopes are not prohibited, but are only regulated upon creation gives effect to all steep slope provisions. We, therefore, conclude that Appellants' proposal to create a steep slope does not violate the steep slope provisions of the Ordinance.

*Yard Requirements*

■ The Ordinance permits by right limited yard encroachment into RCCD Zone Two. Specifically, the Ordinance permits **"minimum required front, side, and rear yards"** in the RCCD, Zone Two, "provided that no **yard** may extend into Zone Two more than half the distance between the outer boundaries of Zone One and Zone Two." Section 521.E.4.b.i.(c) of the Ordinance, R.R. at 1976a (emphasis added). The Ordinance describes such encroachment as "primarily passive in character." Section 521.E.4.b.i of the Ordinance, R.R. at 1974a.

Council found that the backyards of the proposed residential lots do not intrude into the RCCD in violation of Section 521.-E.4.b.i.(c) of the Ordinance. In reaching this finding, Council interpreted this provision to mean that no minimum required front, side, and rear yard may extend into Zone Two more than half the distance between. The second reference to yard

reflects the prior reference to minimum yard in the same sentence. In other words, provided that the minimum required yard does not extend into Zone Two more than 25 feet, the yard lot itself can be part of the RCCD.

The trial court, imparting its own interpretation, found that of the 22 lots proposed, seven residential building lots have yards that encroach more than halfway into RCCD Zone Two. The trial court determined that the second reference to yard in Section 521.E.4.b.i(c) is not a reference to minimum yard, but to "yard." The Ordinance defines yard differently than minimum yard. By using the term yard, instead of minimum yard in the second clause of the sentence, the trial court determined that the Ordinance allows no area of a lot to be more than half way in Zone Two of the RCCD. In other words, "yard" is the total amount of unoccupied space on a lot between the property line and a building, which must be unoccupied.

Under the trial court's interpretation, the Ordinance prohibits any portion of a rear yard to be located in the RCCD. Land along every watercourse in the Township would not be permitted to belong to any lot, and would have to be "lotted out" separately. The resulting RCCD lots, however, would not comply with other dimensional requirements in the Ordinance. We believe that the trial court's interpretation produces an absurd result, which is contrary to the principles of statutory construction. Council's interpretation of the Ordinance, on the other hand, creates a sufficient distance between the residential structures and the RCCD while still enabling areas within the RCCD to be incorporated into residential lots. Council's interpretation is reasonable and gives meaning and effect to all of its provisions and does not create an absurd result. Council's interpretation of its own Ordi-

nance should stand. We, therefore, conclude that the trial court erred by not deferring to the interpretation espoused by Council where no abuse of discretion or error of law has been demonstrated. Pursuant to Council's interpretation of Section 521.E.4.B.i(c), we conclude that Council has not erred in determining that the challenged lots do not violate the Ordinance.

█ Council also determined that the stormwater basins do not violate applicable minimum side yard requirements. Basin 3 is located on the property line that bounds Lots 22, 6 and 7. F.F. 57, R.R. at 3781a. Basin 2 is located on the property line that bounds Lots 22, 11, and 12. F.F. 58, R.R. at 3781a. Due to the location of the basins on the property lines, the Thompsons argue that the basins violate the side yard requirements. According to the Ordinance, "side yard" is defined as a "yard extending the full depth of the lot along a side lot line and extending in width from such side lot line to the nearest point of any structure on the lot." Section 200 of the Ordinance, R.R. at 1767a. Structure is defined as "[a]ny form or arrangement of building materials involving the necessity of providing proper support, bracing, tying, anchoring, or other protection against the forces of the elements." Section 200 of the Ordinance, R.R. at 1765a. Council determined that a basin is not a "structure" as defined by the Ordinance. A basin consists principally of natural materials such as dirt and grass, rather than building materials. While some "building materials," such as concrete outfall structure and pipes are used to construct the basin, such materials are not used to support, brace, tie, anchor or protect against the forces of the elements. Councils' interpretation of its Ordinance is sound and should not be disturbed. We, therefore, conclude that Council has not erred or abused its discretion in determining that

the stormwater basins do not violate the minimum side yard requirements.

*Lot 22—Flag Lot*

The trial court, not Council, found that Lot 22 lacks the required minimum lot width at the building setback line and therefore is either an illegal lot or an impermissible flag lot because Basins 2 and 3 are situate on Lot 22 and a flag lot may only be used to accommodate a single detached dwelling. The trial court determined that such a violation of the Ordinance constitutes error on the part of Council sufficient to reverse its decision.

Section 702.A.2.(b) of the Ordinance provides that a lot width of not less than one hundred twenty-five (125) feet shall be provided at the building line. R.R. at 1820a. Section 416.2 of the Ordinance provides that a "flag lot may serve only one (1) detached dwelling. A flag lot for a nonresidential use or another form of residential use is not permitted." R.R. at 2004a.

Council determined that Lot 22's dimensional defects are not part of the express standards and criteria for conditional use in the RCCD. Council found that Lot 22 is not 125 feet wide at the building setback line as required of lots in the R–2 zoning district in accordance with Section 702.-A.2.(b) of the Ordinance. R.R. at 3805a. Council determined that the lot lines of Lot 22 could readily be adjusted to comply with minimum lot width requirement and imposed a condition as a means to ensure that subdivision approval would not be granted until the lot lines were adjusted. R.R. at 3798a. In the alternative, Council suggested that Appellants can seek relief from the Zoning Hearing Board. *Id.* Council concluded that Appellants must show compliance with Section 702.A.2(b), or relief therefrom, prior to Subdivision and Land Development Approval as "no

subdivision approval can be granted until the Subdivision Plan has been revised to meet the requirements of the Zoning Ordinance." R.R. at 3798a, 3805a.

■ We agree with Council that the question of whether Lot 22 violates the yard dimensions or flag lot provisions is not relevant to a determination of whether roads and utilities can be installed in the RCCD. Such dimensional issues are unrelated to the conditional use application and should be addressed as part of the approval process for the Subdivision Plan. We, therefore, conclude that Council did not err in determining that Lot 22's dimensional problems did not constitute grounds for denial of Appellants' conditional use application.

*Little Neshaminy Creek*

■ Council determined that the Little Neshaminy Creek Watershed Stormwater Management Ordinance (LNC) does not apply to the Property. While the SLDO requires all proposed subdivision and land developments to comply with the LNC, the LNC is only applicable to those areas within the Township which are located in the Little Neshaminy Watershed. Section 105 of the LNC specifically provides that areas of the Township not in the Little Neshaminy Watershed will be controlled by other ordinance provisions. Council found that the Property is located in the headwaters of the Pennypack Creek Watershed. F.F. 44, R.R. at 3780a. Therefore, Council determined that compliance with LNC is not required. Based upon our review, we conclude that Council's findings are supported by substantial evidence and support a conclusion that the LNC is not applicable to the Property.

*Submission of Subdivision Plan with Application*

■ The Thompsons claim that Council abused its discretion in considering Ap-

pellants' Subdivision Plan because the plan had not been reviewed by the planning agency as it was not filed until after Council hearings were underway and the Subdivision Plan in evidence was superseded before the hearings on the conditional use application even began. We disagree.

According to the MPC, zoning ordinances "may" contain "provisions for conditional uses to be allowed or denied by the governing body pursuant to public notice and hearing and recommendations by the planning agency and pursuant to express standards and criteria set forth in the zoning ordinances." Section 603 of the MPC, 53 P.S. § 10603(c)(2). The Ordinance provides that when the application involves subdivision or land development, plans prepared in accordance with the requirements of SALDO "shall be filed for review as well." Section 2508 of the Ordinance, R.R. at 1934a.

Here, at the first hearing on February 24, 2003, Appellants presented its preliminary Subdivision Plan to Council. N.T. (2/24/2003) p. 29–30. The fact that Appellants may not have actually filed the Subdivision Plan with the Township until three days later does not constitute a violation of 2508 of the Ordinance. While the MPC provides that a zoning ordinance "may" contain provisions for conditional uses to be allowed or denied by the governing body pursuant to recommendations by the planning agency, the Ordinance itself does not specifically require Subdivision Plan review by the Planning Commission as a prerequisite to conditional use approval. Nevertheless, Appellants' Subdivision Plan was reviewed by the Planning Commission, prior to the conditional use application being granted. The Planning Commission also reviewed the conditional use application and recommended that Council approve the same. While the Thompsons argue that the Subdivision Plan submitted

at the hearing was superceded and differed from that reviewed by the Commission, Appellants have made modifications to its preliminary Subdivision Plan at the request of the Planning Commission and Council. *See* F.F. 11 and 12, R.R. at 3777a. A preliminary plan is just that— preliminary—and subject to change over the course of the review process. For these reasons, we conclude that Council did not err or abuse its discretion in reviewing the preliminary Subdivision Plan submitted by Appellants.

### OBJECTORS' BURDEN—HEALTH, SAFETY & WELFARE

 Having determined that Appellants have met the burden of presenting evidence meeting the specific requirements of the ordinance, the Thompsons may show that the proposed use will substantially affect the health, safety and welfare of the community. *Id.*; *Johnson v. North Strabane Township*, 119 Pa.Cmwlth. 260, 546 A.2d 1334 (1988), *petition for allowance of appeal denied*, 521 Pa. 625, 557 A.2d 727 (1989). The burden that is placed upon the objectors requires more than mere speculation of possible harm. *Saunders.* The objectors must show a high degree of probability that the proposed use will substantially affect the health and safety of the community. *Id.* In *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (Pa.Cmwlth.1991), we refined this holding and required not only that objectors show a high probability that the proposed use will cause adverse impact but also that the proposed use would create an adverse impact not normally generated by the type of use proposed. *Id.*

Here, Council found that Appellants failed to put forth sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare.

The Thompsons presented testimony that the road crossings and utilities will be adverse to health, safety and welfare of the community. The primary argument was that the construction of the road crossing in the RCCD will require increased impervious surfaces, which will create more surface water flow and lead to flooding. However, Council found that construction of the proposed road will not require more impervious surfaces than would normally be expected of a road with utilities. R.R. at 3801a.

The Thompsons also presented testimony critical of the stormwater management system, but much of this testimony was not credited by Council. R.R. at 3781a–3782a. Council found that no evidence presented by the Thompsons convinced Council that the effects of the stormwater design would be any more detrimental than another development on the Property or be worse than the effects envisioned by the drafters of the Ordinance when they permitted these activities. R.R. at 3801a–3802a. Council found that the evidence presented showed that the stormwater management proposed by the Appellants will actually improve current conditions. R.R. at 3802a. Based upon our review, Council's findings are supported by substantial evidence and support a conclusion that the Thompsons have failed to put forth sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare not normally generated by the type of use proposed.

## CONDITIONS

■■■ Appellants contend that Council did not err by attaching conditions to the conditional use approval to ensure that appropriate design changes would be made to the Subdivision Plan. We agree.

Section 913.2(a) of the MPC, 53 P.S. § 10913.2(a), provides that a governing body can grant or deny a conditional use pursuant to express standards and criteria and permits a governing body to attach such reasonable conditions and safeguards, in addition to those expressed in an Ordinance, as it may deem necessary to implement the purposes of the MPC in the zoning ordinance. Section 2508.4 of the Ordinance further provides:

> In allowing a conditional use, the Township Council may attach reasonable conditions and safeguards as may be deemed necessary to implement the purposes of the Zoning Ordinance and ensure the protection of adjacent uses from adverse impacts that may be determined from credible testimony.

R.R. at 1935a.

■■■ An applicant for special exception or conditional use must demonstrate that his proposed use meets the applicable requirements of the zoning ordinance *when* the application is submitted. *Edgmont Township v. Springton Lake Montessori School, Inc.*, 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993); *Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988), *petition for allowance of appeal denied,* 521 Pa. 613, 557 A.2d 344 (1989). A promise to comply or conditions compelling future compliance cannot cure an otherwise noncompliant application. *Edgmont Township.* If we were to adopt a rule that to obtain a special exception all that would be required is for an applicant to promise to come into compliance at some future date, it would make the approval process meaningless because once an applicant promises it would be entitled to receive the special exception. *Id.,* 622 A.2d at 420.

In *Baird,* a zoning hearing board denied an applicant a special exception to operate a dog kennel on 11.86 acres of land because the applicant failed to show compliance with ordinance requirements applica-

ble to buildings in the zone in question. Overturning the zoning board, the trial court held that because the lot was in excess of 11 acres, it was self-evident that the parcel was large enough to provide for any building configuration necessary to meet the zoning ordinance requirements. Reversing, we held that the zoning board properly denied the special exception because an applicant is required to show at the time of the hearing that it met the requirements of the ordinance. *Baird,* 537 A.2d at 978. We stated:

> We can find no authority imposing such a duty upon a zoning hearing board. Moreover, the proper function of a condition imposed upon a special exception is to reduce the adverse impact of a use allowed under special exception ... not to enable the applicant to meet his burden of showing that the use which he seeks is one allowed by special exception.

*Id.,* 537 A.2d at 977–978.

Similarly, in *Lafayette College v. Zoning Hearing Board of the City of Easton,* 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991), we overturned the grant of a special exception where the plan submitted to the Board did not comply with the on-site parking requirement necessary to obtain a special exception even though the grant of the special exception was conditioned on the applicant obtaining off-site parking. Rejecting that the off-site parking condition cured its failure to meet the specific requirement of on-site parking, we held that the proper function of a condition imposed upon a special exception is to reduce the adverse impact of that permitted use, and not to enable the applicant to meet its burden of showing that it met the requirements necessary to obtain a special exception. *Lafayette,* 588 A.2d at 1326. The standard to be observed by the zoning board is whether the plan as submitted complies with specific ordinance requirements at the time the plan comes before it. *Id.* at 1327; *see Baird.*

Here, Council imposed 17 conditions, many of which require Appellants to modify the Plan to conform to the general dimensional provisions of Ordinance and to implement Best Management Practices (BMPs). The trial court determined that Council's conditions constitute an error of law because the Appellants failed to prove compliance with Ordinance requirements. While we agree with the trial court that compliance is a prerequisite to conditional use approval and cannot be cured by the imposition of conditions, *see Lafayette College,* we disagree that express standards and criteria for conditional use have not been met. As discussed above, Appellants have demonstrated compliance with Sections 521.E and 2508—the specific criteria in the Ordinance for conditional use approval for the requested activities in the RCCD. The conditions relating to dimensional issues and other criteria cited by the trial court as its basis for denying the application are not the express standards and criteria for the grant of a conditional use. The criteria relied upon by the trial court are the very criteria to which all applicants must adhere in developing property in the R–2 zoning district anywhere in the Township, regardless of whether or not a conditional use is required or an RCCD is involved. While issues pertaining to dimensional design standards were not relevant to the conditional use process, Council imposed certain conditions to improve the design of Appellants' preliminary Subdivision Plan at this stage as the dimensional design criteria would ultimately have to be satisfied in the subdivision and land development phase. The effect of the conditions is to enable Appellants to correct the deficiencies of the Subdivision Plan early on to ensure compliance with all the requirements of the Ordinance before

subdivision and land development approval is bestowed.

The only requirement where Appellants have arguably not demonstrated full compliance for conditional use involves Basin 2. Council imposed a condition that Appellants shall redesign Basin 2 to provide a curvilinear design reflective of the surrounding topography. R.R. at 3806a. Council found that "Basin 2, as currently designed, does not meet the definition of 'Naturalized Basin' set forth in Article II of the Zoning Ordinance because Basin 2 fails to utilize a curvilinear, rather than rectilinear design." F.F. 30, R.R. at 3779a. "In order to conform to the requirements of the Zoning Ordinance at Section 521.E.4, Basin 2 must be designed to be curvilinear so as to blend in with the surrounding environment." F.F. 25, R.R. at 3778a.

The requirement that a naturalized stormwater basin must be curvilinear is part of the general requirements in the Ordinance. As only a small portion of Basin 2 is in the RCCD, Council determined that the best method of rectifying the defect is the imposition of a condition to redesign that basin, rather than a denial of the application. We agree with Council that this unsubstantial irregularity did not justify denial of the conditional use application. We conclude that Council has not erred or abused its discretion by attaching reasonable conditions and safeguards as it deemed necessary to implement the purposes of the Ordinance.

*APPLICATION FOR RELIEF*

■ The last matter before us involves whether Appellants are entitled to reimbursement for the cost of the reproduced record. Rule 2155(a) of the Pennsylvania Rules of Appellate Procedure provides:

Unless the parties otherwise agree the cost of reproducing the record shall initially be paid by the appellant, but if the appellant considers that parts of the record designated by the appellee for inclusion are unnecessary for a determination of the issues presented the appellant may so advise the appellee and the appellee shall advance the cost of including such parts. If the appellee fails to advance such costs within ten days after written demand therefor, the appellant may proceed without reproduction of the parts of the record designated by appellee which the appellant considered to be unnecessary.

"[I]f either party shall cause material to be included in the reproduced record unnecessarily, the appellate court may on application ... impose the cost of reproducing such parts on the designating party." Pa. R.A.P. 2155(b).

Here, Appellants declined to reproduce the contents of the record set forth in designation of record filed by the Thompsons on grounds that it was unnecessary to a determination of the issues presented. The Thompsons filed an application for relief with this Court. On July 20, 2005, we struck the record filed and ordered Appellants to produce an integrated and coordinated record with leave to apply for recoupment of costs related to the production. The original reproduction cost $1,369; the corrected record cost $2,985. The entire corrected reproduced record consists of 4,123 pages, of which 2,542 were designated by the Thompsons and 1,591 were designated by Appellants. While the reproduced record is certainly extensive, we do not believe that the Thompsons caused material to be included in the reproduced record unnecessarily. Accordingly, Appellants are not entitled to reimbursement for the cost of the repro-

duced record.[9]

## *CONCLUSION*

Based upon the foregoing opinion, the order of the trial court is reversed. Appellants' Application for Relief for reimbursement for the cost of the reproduced record is denied.

## *O R D E R*

AND NOW, this 30th day of March, 2006, the order of the Court of Common Pleas of Montgomery, dated January 6, 2005 at Docket No. 04–01536, which sustained the appeal of Edwin R. Thompson and Karen J. Thompson and reversed the decision of Horsham Township Council, is REVERSED; and the Application for Relief filed by Orleans Corporation and Orleans Homebuilders, Inc. is DENIED.

9. With regard to the reproduced record, we admonish Appellants' counsel for failing to properly reference witness testimony. While hundreds of pages of excerpted testimony were included in the reproduced record, Appellants failed to identify the witness testifying, which could have been easily achieved by setting forth the name of the witness in the table of contents or by including the first page of each witness' testimony with the excerpted testimony. The table of contents merely chronicles the dates of testimony and provides no information as to who testified on any given date, making this Court's attempts to locate certain witness testimony extremely labored.