IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Appeal of: Shante Hall | : | |
| | : | |
| From a Decision of: Bureau of | : | No. 1002 C.D. 2022 |
| Administrative Adjudication | : | |
| | : | Submitted: May 7, 2024 |
| Appeal of: City of Philadelphia | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH                          FILED: June 10, 2024

The City of Philadelphia (City) appeals the August 10, 2022 order of the Court of Common Pleas of Philadelphia County (trial court) reversing the Bureau of Administrative Adjudication's (Bureau) decision, which affirmed a ticket issued to Appellee, Shante Hall (Hall) by the Philadelphia Parking Authority (PPA) for parking in a handclapped-reserved space without displaying a valid disabled person parking placard. Upon review, we reverse the trial court's order and reinstate the Bureau's decision.

## I. Background

On September 30, 2021, Hall parked his car in a disabled person parking zone. (Trial Ct. Rule 1925(a) Op. at 1.) Hall was issued a valid disabled person parking placard (Placard), however on that day he did not have it in his vehicle. *Id.* at 2. Hall displayed a Placard Identification Card (ID Card) in lieu of his Placard on the

dashboard of his car. *Id.* The ID Card displayed Hall's name, address, and two sets of numbers which appear to correspond to the Placard serial number and the expiration date. (Reproduced Record (R.R.) at 17a-18a.) However, there is no identifying information on the ID Card itself indicating what the two sets of numbers represent. Hall covered the address portion of the ID Card by placing a CD cover over it, leaving visible only the two sets of numbers. *Id.* at 41a.

The PPA issued Hall a citation for parking in a disabled person parking zone without displaying a Placard on the rearview mirror in violation of Section 12-1117(3)(f) of the Philadelphia Code (City Code) Phila., Pa. Code § 12-1117(3)(f) (Citation). *Id.* at 10a. Hall first appealed the Citation to a Bureau hearing officer, who, after a careful evaluation of the evidence and testimony submitted by Hall, found that there was insufficient basis for dismissal. *Id.* at 14a. Hall appealed further to an Appeal Panel, which rendered a final determination of liability and concluded that there was insufficient basis on which to modify the original decision. *Id.* at 22a. On June 6, 2022, Hall filed an appeal with the trial court. *Id.* at 24a-25a. Following briefing and oral argument, the trial court reversed the Bureau's decision and vacated the Citation. The trial court acknowledged its standard of review, which was limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether the Bureau's decision is supported by substantial evidence.[1] The trial court nevertheless concluded:

---

[1] In *Blount v. Philadelphia Parking Authority*, 965 A.2d 226 (Pa. 2009), our Supreme Court recognized that the PPA is a hybrid regulatory agency with multiple functions at the local and statewide level. The PPA's parking regulations are legislatively enacted by the City. *See* Chapter 12–2800 of the City Code. The Bureau functions as the sole local agency responsible for adjudicating the validity of parking tickets issued in the City. In reviewing a local agency decision, a reviewing court must accept the credibility determinations of the agency which heard the testimony, evaluated the credibility of the witnesses, and served as factfinder. *In re Thompson*, 896 A.2d 659, 668 (Pa.

While [] Hall concedes that he did not have his handicapped Placard visible at the time he received the [Citation], he contends that he made every effort to demonstrate to any [PPA] officer that he was eligible to park in a handicapped space by prominently displaying his [] ID Card on the dashboard. [] Hall had recently undergone heart surgery and needed to park in the handicapped space. On the day of the [Citation], the Placard was not in his car. [] Hall submitted a photograph to the [Bureau] showing that the [Citation], which was placed under the windshield wiper on the outside of the car, is within inches of the ID Card, displayed on the interior dashboard.

The City, on behalf of the [Bureau], does not dispute that [] Hall was the rightful holder of a Placard, but the City argues that the vehicle code requires strict compliance, meaning that the Placard, and only the Placard, without exception, must be displayed. Thus, the City contends that the [Bureau's] decision is supported by substantial evidence.

While neither the vehicle code nor the [Pennsylvania Department of Transportation (PennDOT)] website address the purpose of the ID Card, the website includes an entire section discussing the ID Card. The website states that the ID Cards are mailed along with permanent Placards.

[T]he ID Card must serve some purpose. . . . Hall forgot his Placard, but that did not alter his need to park in a handicapped space. Similarly, if someone loses a Placard, or has to obtain a new Placard, there must be a fallback or alternative that legitimate Placard holders can utilize to ensure that they can still park in a handicapped space without getting a [Citation]. The [trial] [c]ourt concludes that in this

---

Cmwlth. 2006). If a full record was not made before the local agency, the trial court may either remand the matter to the agency for further fact-finding or hear the matter *de novo*. *Id.* If, however, the appellate court hears the appeal on the complete record of the proceedings before the local agency, the appellate court's standard of review is limited to determining whether there was a constitutional violation, an error of law, a failure by the local agency to comply with the statute's procedural provisions, or a material finding of fact that is unsupported by substantial evidence. *Id.* In addition, the reviewing court cannot substitute its judgment for that of the agency. *Id.* If supported by substantial evidence, the local agency's findings are binding on appeal. *Id.* Here, a complete agency record was created before the Bureau and, therefore, the trial court was required to apply a limited standard of review.

case, based on these facts, [] Hall's use of the ID Card satisfies his obligations under the vehicle code. Hall displayed his ID Card. Clearly the [PPA] officer saw or should have seen the ID Card when they (sic) went to place the [Citation] under the windshield wiper. In sum, the [Bureau's] decision is not supported by substantial evidence and the decision [] must be reversed.

(Trial Ct. Order, 8/10/2022, fn. 1.)

On August 22, 2022, the City filed a motion for reconsideration, which the trial court denied. (R.R. at 44a-56a.) On September 9, 2022, the City appealed to this Court.[2] On October 3, 2022, the City filed a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P.1925(b), and the trial court issued its Pa.R.A.P. 1925(a) opinion on November 23, 2022. In its opinion, the trial court further explained that (1) Hall had a valid disabled person parking Placard; (2) there was sufficient evidence in the record establishing that Hall did not have the Placard in his car at the time the City issued the Citation; (3) the Commonwealth of Pennsylvania issues an ID Card along with the Placard; and (4) in this case, Hall's use of the ID Card was an adequate substitute for the actual Placard. (Trial Ct. 1925(a) Op. at 1.)

The trial court explained that, because it is undisputed that Hall did not have his disabled person Placard displayed on the rearview mirror of his car, the pertinent question was whether Hall's use of the ID Card should have been considered a valid substitution by the Bureau. The trial court once again noted that ID Cards are mailed along with placards and, although the City did not offer any explanation for the purpose and use of the ID Cards, the ID Cards must serve some purpose. The trial court gave as an example a situation where someone loses a placard or must obtain a

---

[2] On May 5, 2023, the Court issued a Dormant Order for Failure to File Appellee Brief, ordering Hall to file and serve a brief within 14 days. On September 14, 2023, after Hall failed to comply, the Court issued an order precluding Hall from filing a brief and participating in oral argument, if oral argument was scheduled.

new placard, in which case "there must be a fallback or alternative that legitimate placard holders can utilize to ensure that they can still park in a disabled person parking space without getting a ticket." (Trial Ct. 1925(a) Op. at 4.) The trial court concluded that the use of the ID Card in this case therefore was a reasonable alternative and the Bureau erred in not dismissing the Citation on that ground:

> Once the holder of a valid Placard appeals to the [Bureau] and establishes that he has a valid placard[,] and the Placard was unavailable at the time he parked, and he prominently displayed the ID Card as an alternative, the Bureau should properly exercise its discretion and reverse the Citation. . . . Here the [Bureau] misapplied its own regulations and abused its discretion in upholding the Citation and ignoring [] Hall's defense.

> While [the trial c]ourt's order reversing the [Bureau] framed the issue that the [Bureau's] decision was not supported by substantial evidence, the decision is more appropriately viewed as an error of law. To the extent, however, the [Bureau] ignored the evidence presented by [] Hall as discussed in this opinion, the [Bureau's] decision is not supported by substantial evidence.

(Trial Ct. 1925(a) Op. at 4.)

## II. Issues

On appeal,[3] the City presents two issues for our review: (1) whether the trial court erred by concluding that the Bureau's decision was not supported by substantial evidence; and (2) whether the trial court erred by concluding that the Bureau committed an error of law.

---

[3] Where the trial court does not take any additional evidence, our standard of review over the decision of a local agency is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the procedure before the local agency was contrary to statute, and whether necessary findings of fact are supported by substantial evidence. *Kovler v. Bureau of Administrative Adjudication*, 6 A.3d 1060, 1062 n.1 (Pa. Cmwlth. 2010).

5

## III. Discussion

Section 12-1117(3)(f) of the City Code provides:

On each side of each hundred block on which there is metered parking, one reserved accessible parking space shall be located as close as possible to an accessible curb ramp, marked by signs at both ends of the space showing the symbol of accessibility. Parking at each accessible space shall be regulated by a parking meter which has no moving parts, handles or thumb slides. **No vehicle may park at any such space except a motor vehicle bearing a handicapped plate, a handicapped parking placard, a severely-disabled veteran's plate, or a severely-disabled veteran placard** and which is being operated by or for the transportation of a physically handicapped person or a severely-disabled veteran. . . .

City Code § 12-1117(3)(f) (emphasis added). Relatedly, Section 12-1117(4)(a), (b) of the City Code provides:

(a) Handicapped and severely-disabled veterans' plates and **parking placards shall be prominently displayed on the motor vehicle**.

(b) **No person shall park a vehicle in a Handicapped Parking Space unless that vehicle lawfully bears a Disabled Parking Permit** and is being driven by or being used to transport a Disabled Person.

City Code § 12-1117(4)(a), (b) (emphasis added). Finally, Section 12-1117(1)(i) of the City Code defines "disabled parking permit" as "[a] Handicapped Plate, Handicapped Parking Placard, Severely-Disabled Veteran Plate or Severely-Disabled Veteran Placard." City Code § 12-1117(1)(i).

Although we have not previously interpreted Section 12-1117(4)(b) of the City Code, in *Fullman v. Bureau of Administrative Adjudication* (Pa. Cmwlth., No. 975 C.D. 2018, filed April 30, 2019), we interpreted Section 1338 of the Vehicle Code (Vehicle Code), 75 Pa.C.S. § 1338(b), which similarly governs disabled person parking

6

in the Vehicle Code.[4]  In *Fullman*, a driver was cited by the PPA for parking over the maximum time limit. *Fullman*, slip op. at 1.  The driver contested the citation arguing that he had a handicap parking placard, which allowed him an extra hour of parking. *Id.*  The driver did not, however, hang the placard from the rearview mirror of his car because of the wires and obstructions on the rearview mirror.  *Id.*  The driver testified that the placard would not stay up on the rearview mirror and each time he went to the car the placard was on the floor.  *Id.*  The Bureau acknowledged that when a vehicle bears a handicapped parking placard, the driver may park for a period of sixty minutes in excess of the maximum time limit.  *Id.*  However, the Bureau strictly applied Section 1338(b), which requires the disability parking placard to be displayed "in such a manner that it may be viewed from the front and rear of the vehicle by hanging it from the front windshield rearview mirror[.]"  75 Pa C.S. § 1338(b).  The Bureau concluded that the fact that the driver later presented valid disabled parking credentials that could have been displayed was not a basis for dismissal.  The driver appealed to the trial court, which affirmed the Bureau.

On the driver's appeal to this Court, we concluded that, although it was undisputed that the driver otherwise was entitled to the extra parking time, he was still liable for the citation because he did not properly display the placard as required by the

---

[4] Section 1338(b) provides, in pertinent part:

> When parking the designated vehicle, the person with disability parking placard shall be prominently displayed in such manner that it may be viewed from the front and area of the vehicle by hanging it from the front windshield rearview mirror of a vehicle only when that vehicle is utilizing a parking space reserved for persons with disabilities. When there is no rearview mirror, or the placard is not designed in such a manner to accommodate hanging from a rearview mirror, the placard shall be prominently displayed on the dashboard.
> . . . .

75 Pa.C.S. § 1338(b).

clear language of Section 1338(b) of the Vehicle Code. *Id.* at 4. We noted that the driver had a rearview mirror but testified that he was unable to hang his placard because it was old and worn. *Id.* We looked to the language of Section 1338(b) directing that, "[w]hen there is no rearview mirror, or the placard is not designed in such a manner to accommodate hanging from a rearview mirror, the placard shall be displayed on the dashboard." *Id.* (quoting 75 Pa.C.S. § 1338(b)). We then explained that a worn placard is not the same as a placard "not designed in such a manner to accommodate hanging from a rearview mirror." 75 Pa.C.S. § 1338(b). We accordingly applied the clear language of Section 1338(b) and concluded that to exceed the parking time limit, the driver strictly was required to hang the placard "from the front windshield rearview mirror" of the vehicle, which he did not do. *Id.* We therefore affirmed the trial court. *Id.*

Here, the City first argues that the trial court erred when it concluded that the Bureau's decision was not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kocher's IGA v. Workers' Compensation Appeal Board (Deitrich)*, 729 A.2d 145 (Pa. Cmwlth. 1999). When determining if evidence is substantial, an agency is free to accept or reject the testimony of any witness in whole or in part. *Id.* In addition, as a fact finder, a local agency has exclusive province over questions of credibility and evidentiary weight. *Id.* The trial court initially concluded the Bureau's decision was not supported by substantial evidence because the Bureau disregarded the fact that PennDOT's website includes an entire section discussing ID Cards and, therefore, they must serve some purpose. The trial court concluded that this purpose must be to function as a substitute for placards when they are not available. Because Hall made every effort to demonstrate, by placing his ID Card on his dashboard, that

8

he was eligible to park in a handicapped space, the trial court concluded that the Bureau's decision was not supported by substantial evidence.

To the extent that the trial court's decision was, in fact, based on a finding of inadequate evidence, we disagree. The following facts are undisputed: (1) Hall was the rightful holder of the Placard; (2) Hall did not have his Placard in the car he was driving on the day of the Citation; (3) Hall did not testify that the Placard had been stolen or lost; and (4) instead of displaying his Placard, Hall placed his ID Card on his dashboard and covered his address with a CD case. The Bureau relied on those facts to conclude that Hall had not complied with Section 1117(3)(f). The Bureau's finding thus clearly was supported by substantial (and undisputed) evidence in the record and, to the extent that the trial court concluded to the contrary, it erred.

The City next argues that the trial court erred in concluding that the Bureau should have considered Hall's ID Card to be a valid substitute for his missing Placard. In effect, the trial court concluded, as a matter of law, that ID Cards must be accepted by parking authorities in lieu of placards. We disagree with the trial court.

First, as in *Fullman*, the City Code's provisions here are clear and unambiguous and mandate that a placard must be prominently displayed so that a parking enforcement officer, a City police officer, or other person authorized to issue parking violations is able to observe the placard in a vehicle parked in a handicapped parking space. The City Code does not expressly provide for any substitutes that may be displayed in lieu of the placard. Although the City Code permits the display of other forms of identification (*e.g.*, license plates), it does not expressly permit utilizing an ID Card as a valid substitution. Thus, on its face, the Code does not permit the substitution that the trial court permitted, and the Citation is, on its face, valid. *Fullman*.

9

Second, the trial court misapplied the Bureau's regulations to conclude that it had erred. Citing Section 5.02(e)(x) of the Bureau's regulations, the trial court stated that once Hall appealed to the Bureau and established that (1) he has a valid Placard, (2) the Placard was unavailable at the time he parked, and (3) he prominently displayed the ID Card as an alternative, the Bureau should have, as a matter of law, exercised its discretion and dismissed the Citation. However, Section 5.02(e)(x) only requires that a driver be given a fair opportunity to rebut the violation charged and provides that the "violation shall be dismissed if a valid defense is proven by the preponderance of the evidence." City Code §5.02(e)(x). The Bureau's hearing examiner and Appeal Panel concluded that Hall's defense to the Citation was invalid, which conclusion was supported by a preponderance of the evidence.

Lastly, even assuming that an ID Card could, in some circumstances, function as a valid substitute for a placard (which we expressly do not hold), the hypothetical circumstances for such substitution cited by the trial court did not exist in this case. It was undisputed below that Hall simply did not put his Placard in his car on the day of the Citation. It was not misplaced or stolen, and Hall was not waiting for a new placard to be delivered in the mail. Further, the ID Card was not prominently displayed in Hall's car. Hall testified that he covered the address portion of the ID Card with a CD cover to hide his address from onlookers. The only portions of the ID Card visible to an inspecting officer were two otherwise unidentified serial numbers that were not explained in the record below. Thus, even assuming that the City Code could permit the substitution of a placard with an ID Card, we cannot conclude that the Bureau erred as a matter of law by not permitting such a substitution in these circumstances. We are therefore constrained to conclude that the trial court erred in substituting its judgment for that of the Bureau.

10

## IV. Conclusion

The trial court erred as a matter of law in concluding both that the Bureau's decision was not supported by substantial evidence and that the Bureau erred as a matter of law. We accordingly reverse the trial court's order an reinstate the Bureau's order affirming Hall's Citation.

_____
PATRICIA A. McCULLOUGH, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Shante Hall                    :
                                          :
From a Decision of: Bureau of             :    No. 1002 C.D. 2022
Administrative Adjudication               :
                                          :
Appeal of: City of Philadelphia           :

## *ORDER*

AND NOW, this 10th day of June, 2024, the August 10, 2022 order of the Court of Common Pleas of Philadelphia County is reversed, and the January 4, 2022 decision of the City of Philadelphia's Bureau of Administrative Adjudication is reinstated.

_____
PATRICIA A. McCULLOUGH, Judge