IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Properties, Inc., :
:
Appellant :
:
v. : No. 783 C.D. 2022
: Submitted: April 14, 2023
City of Allentown Zoning :
Hearing Board :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  April 4, 2024


          Lehigh Valley Properties, Inc. (Landowner) appeals the order of the Lehigh County Court of Common Pleas (trial court), dated June 21, 2022, affirming the City of Allentown (City) Zoning Hearing Board's (Board) decision denying Landowner's zoning application seeking dimensional variances to construct two billboards.  Landowner contends that the Board erred or abused its discretion by denying its application.  Upon review, we affirm.

          Landowner is the owner of 2.06 acres of vacant land located at 901 North Ivy Street, Allentown, Pennsylvania (Property) in the General Industrial District (I3 District) under the City's Zoning Ordinance (Ordinance).[1]  In 2018,

_____

[1] The City adopted the Ordinance on November 3, 2010, and it went into effect November 15, 2010.

Landowner filed a zoning application for the construction of two double-faced billboards on the Property -- one static and the other digital. Billboards are permitted in the I3 District, but variances were needed to comply with the Ordinance's distance requirements. Specifically, Landowner proposed to place the static billboard 79 feet from a residential district, when the Ordinance requires at least 300 feet. Landowner proposed to place the digital billboard 571 feet from another off-premises digital billboard, which was installed by the City, when the Ordinance requires 1,000 feet. Section 1319.08(A)(3) of the Ordinance. The zoning application was denied.

Landowner filed an appeal with the Board. The Board conducted two evidentiary hearings; no objectors appeared. Based on the testimony and evidence presented, the Board concluded that Landowner failed to prove unnecessary hardship. The Board found that there was insufficient evidence that the Property could not be used in conformity with the Ordinance. The Board was also not convinced that the billboards would not be detrimental to the public welfare. By decision dated October 15, 2020, the Board denied the appeal as to both billboards.

Landowner appealed to the trial court, which remanded the matter to the Board for further proceedings. On remand, the Board conducted a third hearing, wherein Landowner presented the testimony of four witnesses and presented exhibits supporting and expanding on the evidence introduced at the prior hearings. No objectors or other interested parties appeared at the hearing; no evidence was offered in rebuttal.

The Board incorporated its prior findings and made new findings based on the testimony and evidence presented. The Board found that the Property was originally part of a four-acre contiguous tract that housed Landowner's recycling business. In 2011, the City initiated eminent domain proceedings for the

2

development of the American Parkway (Parkway). As a result of the taking, Landowner's four-acre tract was bifurcated and reduced to two smaller parcels located on both sides of the Parkway, one of which is the subject Property. The eminent domain action effectively ended Landowner's recycling business activities, which recycled soil, wood, and concrete. Board Op., 4/15/21, Finding of Fact (F.F.) Nos. 7-10.

The Property is a triangular-shaped lot bordered by the Parkway, a Church parking lot, and the rear alley of a residential neighborhood. There are no structures or other improvements on the Property. The Property is severely sloped. Of the 2.06 acres, only .72 acres is level with the rest occupied by large mounds of crushed concrete and claylike soil -- remnants from Landowner's former recycling business. F.F. Nos. 7, 11.

Because of these conditions, Landowner presented testimony that the development of the Property would be difficult and likely cost prohibitive and that the billboards were the highest and best use. F.F. Nos. 12-13; Reproduced Record (R.R.) at 145a, 148a. Steve Pany, a licensed civil engineer, testified that it was extremely difficult to develop the Property given its size, shape, slopes, and piles of crushed concrete and soil. However, he acknowledged that Landowner could sell the crushed concrete and soil, which would improve the level surface area and maximize the buildable area. R.R. at 143a-44a, 148a, 153a-60a.

Dennis Atiyeh, Landowner's site manager and billboard project manager, testified that the bifurcation created a hardship for Landowner. The topography and elevations rendered the Property unsuitable for the prior recycling operation. He testified that the "highest and best use" of the Property was the

3

construction of the proposed billboards, but he did not explore other permitted uses. R.R. at 197a-98a; *see id*. at 200a-03a.

The Property was not marketed by any professional commercial real estate marketing firm to determine public or private interest for uses permitted by the Ordinance. Only informal inquiries were made of neighboring property owners, which were unsuccessful. F.F. Nos. 14; R.R. at 148a-49a, 198a, 209a.

Landowner's other witnesses, Brian Ritter and Peter Terry, both engineering experts, offered testimony that, if the variances were granted, the billboards would not be detrimental to the public welfare or alter the essential character of the neighborhood. *See* R.R. at 164a-93a.

The Board once again concluded that Landowner failed to meet its burden of proving unnecessary hardship. The Board explained that Landowner did not present substantial evidence that the Property could not be used for some purpose in conformity with the Ordinance. Additionally, Landowner offered no evidence of any active, prolonged, and specific testing of the Property's marketability. The Board also noted that Landowner's activities upon and use of the Property contributed, in part, to the difficulties of developing the Property. Thus, by decision dated April 15, 2021, the Board denied Landowner's appeal.

Landowner appealed to the trial court. Without receiving additional evidence, by decision dated June 21, 2022, the trial court denied Landowner's appeal and affirmed the Board's decision.

Landowner appealed to this Court.[2] Landowner contends that the Board erred or abused its discretion by denying its dimensional variance requests for

---

[2] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the zoning hearing board abused its discretion or committed an **(Footnote continued on next page…)**

both billboards. According to Landowner, the unrebutted evidence demonstrated that the Property's topography and limited dimensions prevent development of any kind other than the construction of the two billboards.

Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[3] as reflected in Section 1307.03(A)(1) of the Ordinance, sets forth the following requirements for a variance:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the appellant.

---

error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). The zoning hearing board abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). When reviewing the grant or denial of a variance, the Court may not substitute its interpretation of the evidence for that of the zoning hearing board. *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010). Further, determinations regarding the credibility of witnesses, the weight of the evidence, and the resolution of conflicts in evidence are the exclusive province of the zoning hearing board. *Id.*

[3] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. §10910.2(a). An applicant seeking a variance bears the burden of proof. *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 433 (Pa. Cmwlth. 2010).

"A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations." *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (citing *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998)). "The same criteria apply to use and dimensional variances." *Id*. "However, in *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance." *Id*.

In determining whether an applicant established unnecessary hardship for a dimensional variance, the courts may consider multiple factors, including "the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood." *Tri-County Landfill*, 83 A.3d at 520.

"Although *Hertzberg* eased the requirements, it did not remove them." *Tri-County Landfill*, 83 A.3d at 520. "An applicant must still present evidence as to

6

each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Id.* "Where no hardship is shown, or where the asserted hardship amounts to a *landowner's desire to increase profitability or maximize development potential*, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Id.* (emphasis added). "When an applicant attempts to establish an unnecessary hardship by showing that the property lacks marketability if development is limited to permitted . . . uses, [the applicant] must present evidence of active, prolonged and specific testing of its marketability." *Pennsylvania Parking, Inc. v. Zoning Board of Adjustment, City of Philadelphia*, 514 A.2d 213, 215 (Pa. Cmwlth. 1986).

Here, despite a second opportunity to present evidence in support of its variance request, Landowner still failed to prove unnecessary hardship. Although Landowner showed that the Property possesses unique physical characteristics in that it is a triangular-shaped lot containing steep slopes with piles of debris, R.R. at 143a, 148a, 197a, 200a, Landowner failed to show that the Property could not be used for some purpose in strict conformity with the Ordinance. The Ordinance permits numerous other uses in the I3 District, including a commercial communications tower. *See* Section 1313.01(C) of the Ordinance. However, Landowner did not explore this use or any other permitted uses. *See* R.R. at 201a, 203a, 209a-10a. In addition, Landowner made no attempts to market the Property commercially to determine if there was public or private interest in the Property for uses permitted by the Ordinance. Landowner only made informal inquiries with neighboring property owners, who were not interested. *Id.* at 148a-49a, 197a-98a, 209a. As Atiyeh explained, "the minute you take [the Property] off and start marketing it, we have to pu[t] our whole billboard project on the ice." *Id.* at 209a-

7

10a. Atiyeh persisted that the billboard use was the "highest and best use" of the Property, to the exclusion of all other possibilities. *Id*. at 197a, 198a; *see id*. at 203a. Atiyeh testified, "[t]he only use for that [P]roperty . . . is two billboards, like we have planned." *Id*. Although we recognize that the proposed billboards use may be the "highest and best" use of the Property, this does not satisfy the unnecessary hardship criterion required for a variance, even under the relaxed standard set forth in *Hertzberg*. *See Tri-County Landfill*, 83 A.3d at 520.

In addition, the Board found that some of the Property's unique physical conditions were caused, in part, by Landowner. Both Paney and Atiyeh testified that the Property contains piles of crushed concrete and claylike soil left over from the Landowner's former recycling business. R.R. at 153a-54a, 194a. Paney testified that if those materials could be sold and removed from the Property, Landowner could increase the level area of the Property, which would improve its accessibility and usability. *Id*. at 157a, 159a-60a. Atiyeh acknowledged that there is a market for the recycled concrete and dirt. *Id*. at 194a. However, Atiyeh testified "until these billboards are addressed, those [debris] piles are going to sit there." *Id*. at 204a.

Upon review, Landowner failed to present substantial evidence that the unique physical circumstances or conditions of the Property prevented the Property from being used in conformity with the permitted uses of the Ordinance and were not, to some extent, self-inflicted. Thus, we conclude that the Board did not err or abuse its discretion in denying Landowner's variances.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Properties, Inc.,      :
     :
           Appellant     :
     :
          v.          : No. 783 C.D. 2022
     :
City of Allentown Zoning      :
Hearing Board      :

# **O R D E R**

AND NOW, this 4th day of April, 2024, the order of the Lehigh County Court of Common Pleas, dated June 21, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge