IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Dmitry Erastov    :
             :
From a Decision of:     : No.  61 C.D. 2023
Tax Review Board      : Submitted: May 7, 2024


BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
       HONORABLE MICHAEL H. WOJCIK, Judge
       HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE       FILED:  June 5, 2024


  Dmitry Erastov (Owner) appeals an order of the Court of Common Pleas of Philadelphia County (Common Pleas) that affirmed the City of Philadelphia (City), Tax Review Board's (Board) decision denying Owner's appeal of a bill from the City Department of Licenses and Inspections (L&I Department) for the demolition of property located at 1950 North Napa Street in Philadelphia, Pennsylvania (Property) after the L&I Department deemed the Property an imminent danger to the public.  After review, we affirm.

  In 2017, Owner purchased the Property at a sheriff's sale.  Supplemental Reproduced Record (S.R.R.) at 1.  Owner's registered address with the Philadelphia Office of Property Assessment was 644 Parlin Street, 2nd Floor, in Philadelphia, Pennsylvania (Parlin Street Address).  Reproduced Record (R.R.) at 44a.  Owner's property manager, Stepanou Slava (Manager), was responsible for taking care of the Property. *Id.* at 31a.

On March 22, 2019, the L&I Department received an emergency call that the rear of the Property had collapsed. *Id.* at 47a. The L&I Department inspected the Property and posted a notice to its front window detailing that the L&I Department declared the Property imminently dangerous, and the Property required repairs or demolition. *Id.* at 46a-47a. On April 22, 2019, the City sent a notice of violation indicating the Property was imminently dangerous (Notice of Violation) to the Parlin Street Address. *Id.* at 44a. The Notice of Violation is entitled "Final Notice of Violation and Order Imminently Dangerous Building." S.R.R. at 3. The Notice of Violation provided:

> This is to inform you that [the L&I Department] inspected the subject premises on 04/22/19 and has declared it IMMINENTLY DANGEROUS, in whole or in part, pursuant to Section PM15-110.1 of the Philadelphia Property Maintenance Code[1] (Property Maintenance Code)].[2] The results are included in the violation section below.

---

[1] Phila., Pa., Property Maintenance Subcode, §§ 101.1-904.2 (effective July 1, 2015). The Philadelphia Property Maintenance Code, also referred to as Subcode "PM," is located within Title 4 (The Philadelphia Building Construction and Occupancy Code) of the Philadelphia Code of General Ordinances.

[2] Section PM 15-110.1 of the Property Maintenance Code provides:

> When, in the opinion of the code official, there is imminent danger of failure or collapse of a structure or any part thereof which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, the code official is hereby authorized and empowered to order and require the occupants to vacate the same forthwith in accordance with the cease operations provisions set forth in the administrative code. The code official shall cause to be posted at each entrance to such structure a notice stating the imminent danger and prohibiting occupancy. It shall be unlawful for any person to enter such structure except for the purpose of making the required repairs or demolishing the structure.

Phila., Pa., Code § PM 15-110.1.

You are directed to obtain all necessary permits as required by the City and to make repairs or demolish the structure to remove the imminently dangerous condition. Failure to comply with this order forthwith shall result in the City taking action to demolish the structure and stucco remaining party walls exposed by the demolition as per [the City] policy. You, the owner will be billed for all costs incurred by the City, including administrative fees.

S.R.R. at 3. Moreover, the Notice of Violation outlined the specific violations noted in the inspection, including the defects to the floor and flooring components on the first and second floors of the building, the rear exterior wall not being anchored to supporting or supported elements, and defects to the main roof. *Id.* at 3-4. The Notice of Violation outlined how to file an appeal and indicated an appeal deadline of five days. *Id.* at 4.

On May 7, 2019, the L&I Department put the demolition of the Property out for bid to contractors, and the Property was demolished between May 8, 2019, and May 22, 2019. R.R.at 56a. The L&I Department deemed the demolition complete on September 11, 2019, and on September 25, 2019, the L&I Department issued a bill for the cost of the demolition to Owner. *Id.* at 54a. The L&I Department invoiced a total of $17,932.20, which included $13,000 for labor, $2,730 for an administrative charge, and $2,202.20 for interest. *Id.* at 24a. Owner appealed the bill to the Board.

The Board held a hearing on February 10, 2022.[3] *Id.* at 10a-74a. At the hearing, Manager testified that after he received notice the Property was going to be demolished, he immediately took action to have the Property repaired in an effort to avoid demolition. *Id.* at 28a. He testified that he did not have enough time to get proper permits to repair the Property. *Id.* at 29a. Specifically, Manager testified that

_____

[3] While the Board noted Owner's appeal was untimely, the Board approved his nunc pro tunc petition. S.R.R. at 1.

based on his experience, it would take approximately six to nine months to get the proper permits to complete the repairs. *Id.* at 29a-30a. Manager testified he received, by certified mail, a notice stating the Property was going to be demolished approximately 30 days before the demolition. *Id.* at 33a-34a. He indicated that was the only notice he received. *Id.* at 35a. Manager also testified the Parlin Street Address, in addition to a United States Post Office Box address, are both valid addresses for him. *Id.* at 35a.

Additionally, Thomas Rybakowski, a supervisor within the L&I Department (Supervisor), testified as the L&I Department's court liaison. *Id.* at 43a. Supervisor testified that the L&I Department sent the Notice of Violation to the Parlin Street Address on April 22, 2019. *Id.* at 44a. Supervisor also indicated that the L&I Department would typically send a single notice of violation for an imminently dangerous property, and in this case, it sent only the one notice. *Id.* at 57a. Supervisor further explained that a notice of violation does not require an owner to complete repairs within a certain deadline, but rather instructs the owner to obtain a permit immediately and provides notice the owner can appeal the notice of violation within five days. *Id.* at 59a. Regarding the risk of imminently dangerous properties, Supervisor explained when there is a collapse at a property, further collapse is possible, creating a danger to the adjoining properties and the public at large. *Id.* at 59a-60a.

At the conclusion of the hearing, the Board denied Owner's appeal, but abated the accrued interest. S.R.R. at 1-2. In its opinion, the Board indicated Owner failed to establish he bore no responsibility for the demolition bill. *Id.* The Board acknowledged the City's responsibility to ensure properties that are not kept in good repair are safe. *Id.* at 2. Additionally, the Board noted Owner did not produce any

4

evidence he requested further instructions from the L&I Department or that he filed an appeal within five days as directed by the Notice of Violation. *Id.* Therefore, the Board concluded Owner was responsible for the demolition bill. *Id.* Owner appealed to Common Pleas.

Common Pleas held a hearing on December 21, 2022, at which it heard argument, but did not take additional evidence. R.R. at 91a. Before Common Pleas, Owner argued that although the Board abated the interest, it should have reversed the entire demolition charge because the L&I Department failed to comply with the Property Maintenance Code's process and notice requirements. *Id.* at 92a. Counsel for Owner asserted Manager never received notice, specifically asserting: "We're not saying he received that notice in April of 2019. We're saying the opposite. He never received it. The City doesn't have proof it was ever sent." *Id.* at 93a. Additionally, Owner argued the time period between the Notice of Violation and the demolition was too short to allow any "real window of opportunity" for Owner to obtain permits or begin necessary repairs to avoid demolition. *Id.* at 96a.

In response, the City argued Owner waived the issue of notice because he did not raise it before the Board. *Id.* at 94a. Counsel for the City noted that Owner's counsel conceded multiple times before the Board that Owner had notice, including in his opening statement and in Manager's testimony. *Id.* at 94a-95a, 97a. Further, the City asserted it complied with the Philadelphia Code's notice requirements, and asserted Owner took no efforts to appeal within the five-day appeal period. *Id.* at 98a.

Common Pleas denied Owner's appeal and affirmed the Board's decision. Owner now appeals to this Court.

5

On appeal, Owner presents several arguments for our consideration,[4] which

we summarize as follows. *See* Owner's Br. at 5-9. First, Owner asserts Common

[4] For ease of reference and analysis, we have summarized Owner's challenges. In the Statement of Questions Involved section of his brief, Owner sets forth nine questions for review as follows:

> A) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the Court Order dated December 21, 2022, affirming the March 8, 2022 [Board] Decision when oral argument and testimony by [the City's] own witness clearly demonstrates that [Owner] did not receive notice of the imminently dangerous designation of the [Property] by the [City]?

> B) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the Court Order dated December 22, 2022, affirming the March 8, 2022 [Board] decision, while a genuine issue of material fact existed, including, but not limited to, that [Owner] did not receive notice of the imminently dangerous designation of the Property by [the City] and whether [the City] failed to follow proper, reasonable, fair, and/or standardized procedure(s) regarding said service?

> C) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the Court Order dated December 21, 2022 affirming the March 8, 2022 [Board] Decision, while [Owner] was not afforded a reasonable period of time to remediate the Property before it was demolished by [the City], as [Owner] had not received prior proper notice of the imminently dangerous designation of the same?

> D) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the March 8, 2022 [Board decision] despite clear evidence in support of [Owner], as the record indicates [the City's] clear breach of a statutory requirement to provide parties like [Owner] with proper notice of an imminently dangerous property designation in a reasonable fashion?

> E) Whether [Common Pleas] abused its discretion or committed an error law by concluding that [the City], as a government agency, met its service requirements, in direct contradiction of the record and evidence presented, and, in doing so, is tacitly allowing government agencies, such as [the City] to select which regulations it should or should not follow?

> F) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the March 8, 2022 [Board] decision where [Common Pleas] failed to fully consider evidence and exhibits provided by [Owner], and, as such, failed to

Pleas erred by affirming the Board's decision where the City failed to produce evidence that it complied with the Philadelphia Code's notice requirements before the demolition of Owner's Property. *Id.* Second, Owner contends Common Pleas erred by affirming the Board's decision where the evidence demonstrated Owner did not have adequate time to remediate the Property before demolition. *Id.*

---

consider that [the City] failed to follow its own rules and/or regulations, to the great detriment of [Owner], including but not limited to [the City's] statutory failures, including not providing [Owner] with notice of the imminently dangerous designation and the failure of [the City] to provide [Owner] sufficient time to remediate the Property prior to the demolition of the same, which occurred less than thirty (30) days after [Owner] was notified of [the City's] intent to demolish the Property?

G) Whether [Common Pleas] abused its discretion or committed an error of law by affirming the March 8, 2022 [Board decision] despite clear evidence that [the City] failed to provide [Owner] with a proper notice, as statutorily required, within a provided period of time and[], as such, did not allow [Owner] to repair or perform work on the Property at issue, which led directly to the demolition of the Property, at the unjustified expense of [Owner]?

H) Whether [Common Pleas] abused its discretion or committed an error of law by concluding that the timeframe within which [Owner's] [P]roperty was demolished and [Owner's] learning of the imminent danger leading to that demolition was sufficient for [Owner] to hire architects, contractors, or other parties, to secure the necessary permits, and other required measures, in which to remediate the Property such that the demolition would not occur and, thus, [Owner] would not have suffered the damages [Owner] eventually suffered?

I) Whether [Common Pleas] abused its discretion or committed an error of law by concluding that there was no error of law, when [Owner] was not properly noticed of the imminently dangerous designation of the [P]roperty, in clear breach of a statutory requirement to provide parties like [Owner] with a reasonable and/or proper timeframe in which to remediate a property prior to the demolition of the same and as clearly evidenced by the record, nor given adequate time to remediate the Property once noticed of the impending demolition of the same?

Owner's Br. at 5-9.

In response, the City argues it presented substantial and uncontroverted evidence to the Board that the L&I Department provided proper notice of the imminently dangerous condition of the Property to Owner as required by the Property Maintenance Code. City's Br. at 12. The City notes the L&I Department posted notice on the Property, provided notice by mail, and, additionally, Manager testified he received the mailed notice in April 2019. *Id.* Moreover, the City asserts Owner waived any improper notice arguments when he did not raise the issue before the Board and, rather, conceded that notice was not in dispute. *Id.* Additionally, the City argues it presented substantial evidence to show Owner had sufficient time to remediate the Property. *Id.* Owner failed to appeal the Notice of Violation within the five-day period to do so, or to otherwise apply to the City for any permits to make any repairs. *Id.* at 13. Furthermore, the City asserts the building had already suffered a partial collapse and anyone visiting the Property would have immediately known it was in serious need of repair. *Id.*

## DISCUSSION

Before addressing the merits of Owner's arguments on appeal, this Court must consider the City's contention that Owner waived any issues regarding notice by failing to raise those issues before the Board. Section 753(a) of the Local Agency Law[5] incorporates the waiver doctrine by requiring all legal questions be raised before the administrative agency hearing the appeal. 2 Pa.C.S. § 753(a). The record is clear Owner did not challenge the City's notice at the hearing before the Board. Instead, Owner conceded numerous times that Owner received notice and was not

---

[5] 2 Pa.C.S. §§ 551-555, 751-754.

challenging the City's notice. Because Owner failed to raise this issue before the Board, his challenges to the City's notice are waived.[6]

We turn to Owner's remaining argument. Where, as here, the trial court takes no additional evidence, our review is the same as the trial court's, we review to determine whether constitutional rights were violated, whether an error of law was committed, or whether the Board's findings of fact are supported by substantial evidence. *See* Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b);[7] *Phila.*

---

[6] Notwithstanding, even if Owner had properly preserved this issue, we would reject Owner's assertions regarding improper notice. Regarding notice, Section PM-110.2 of the Property Maintenance Code provides where an imminently dangerous condition is found, the City is required to serve on the owner or managing agent written notice describing the imminent danger and specifying the required repair to render the structure safe or requiring the imminently dangerous structure or portion thereof to be demolished within a certain time. Prop. Maint. Code § PM-110.2. Regardless of whether the person receives notice, the City is required to post a copy of the notice in a conspicuous place on the premises, and such procedure "shall be deemed the equivalent of personal notice." Prop. Maint. Code § PM-110.3. Under Section A-502.4 of the Philadelphia Administrative Code, a notice of violation is deemed properly served if a copy is delivered by one or more of the following: (1) personally, (2) by first class mail to the last known residence or business address, (3) by certified or registered mail to the last known address or business address, return receipt requested, (4) by leaving it with an adult member of the person's family, (5) by leaving it in the possession of an adult member of the person's family, or (6) where an address is unknown or the mail is returned, the City must post the notice in a conspicuous place at the entrance or avenue of access to the premises in violation and such procedure is deemed the equivalent of personal notice. Phila. Admin. Code § A-502.4. Here, the Board found the L&I Department mailed the Notice of Violation. Additionally, the L&I Department posted the Notice at the entrance of the Property. Moreover, Manager testified to receiving the Notice of Violation before the demolition. Owner's arguments regarding lack of notice and improper service lack merit. Accordingly, the Board did not err by concluding that the L&I Department complied with the Property Maintenance Code's notice requirements, and the trial court did not err in affirming the Board's decision.

[7] Section 754(b) of the Local Agency Law provides:

In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find

*Eagles Football Club, Inc. v. City of Phila.*, 823 A.2d 108, 118 (Pa. 2003). A reviewing court is to look only to the evidence relied upon by the fact finder, in this case the Board, to see if it is sufficiently substantial to support the findings. *In re Thompson*, 896 A.2d 659 (Pa. Cmwlth. 2006) (citation omitted). Further, a reviewing court is to accept the credibility determinations made by the municipal body that hears the testimony, evaluates the credibility of witnesses, and serves as fact finder. *Id.* (citation omitted). Where the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings which are the result of resolutions of credibility and conflicting testimony. *Id.*

Owner argues Common Pleas erred by affirming the Board's decision where Owner did not have adequate time between notice and demolition to remediate the Property. *See* Owner's Br. *generally*. Owner asserts there was "no possible way for [Owner] to remediate the imminently dangerous condition of the Property prior to it[] being demolished." *Id.* at 23. Owner relies on Manager's testimony that the necessary timeline for remediation would include at least six months because Owner would need to hire an architect or engineer, pull drawings, and then wait for the L&I Department to issue a permit. *Id.* at 24. As Owner concedes in his brief, Manager testified "he received notice of the demolition approximately thirty (30) days before the actual demolition." *Id.* Additionally, Supervisor testified that the L&I Department sent the Notice of Violation on April 22, 2019, and the bid became

that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 754(b).

active on May 7, 2019. *Id.* Owner asserts "receiving a notice of demolition, with the demolition in fact occurring less than thirty (30) days from the date of receipt, does not leave a property owner with sufficient time to remediate the Property." *Id.* at 32. We disagree.

Under Section PM-110.4 of the Property Maintenance Code, where an order to "eliminate an imminent danger is rejected or not obeyed, or when, in the opinion of the code official, immediate action is required to protect the public safety, the code official shall cause the necessary work to be done to demolish the structure[.]" Prop. Maint. Code § PM-110.4. Further, the Property Maintenance Code provides that nothing within the Code should be deemed to limit in any way the right of the City to correct or remove any condition deemed to be an immediate hazard to the health or safety of the public. *Id.* The Property Maintenance Code does not require the City to provide any specific amount of time between notice and demolition. Owner fails to identify any legal support for his assertion that the L&I Department was required to provide more than 30 days' notice that the Property was imminently dangerous before it could demolish the Property.

We agree with the Board that the City has a responsibility to ensure properties are being kept in good repair, and we see no basis to conclude the City should be required to allow an imminently dangerous property to remain a danger under these circumstances where Owner did not appeal the Notice of Violation or give the City any indication he intended to repair or demolish the building on his own.

11

As such, we discern no error in the Board's decision.  Accordingly, the trial court's order affirming the Board's decision is affirmed.

_____

STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Dmitry Erastov      :
                                           :

From a Decision of:           : No.  61 C.D. 2023
Tax Review Board            :


# **O R D E R**


**AND NOW**, this 5th day of June 2024, the December 21, 2022 order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.


_____
STACY WALLACE, Judge